IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Tron S. McCoy, | ) | |
| | ) | Civil Action No. 6:10-380-MBS-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security awarding him  a closed period of disability insurance benefits from May 16, 2005, through July 10, 2007, under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed his application for disability insurance benefits (DIB) on September 28, 2006, alleging that he became unable to work on May 16, 2005.  The application was denied initially and on reconsideration by the Social Security Administration. On March 26, 2007, the plaintiff requested a hearing.  The administrative law judge, before whom the plaintiff, his attorney, and a vocational expert appeared on February 18, 2009, considered the case *de novo*, and on May 13, 2009, found that the plaintiff was disabled from May 16, 2005, through July 10, 2007, but not thereafter.  The administrative law judge's

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on December 31, 2009. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff was entitled to only a closed period of benefits from May 16, 2005, through July 10, 2007, the Commissioner has adopted the following findings of the administrative law judge:

> (1)     The claimant met the insured status requirements of the Social Security Act as of May 16, 2005, the date the claimant became disabled.
>
> (2)     The claimant has not engaged in substantial gainful activity since May 16, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> (3)     At all times relevant to this decision, the claimant has had the following severe impairments: lumbar syndrome status post laminectomies, peroneal neuropathy, and obesity (20 CFR 404.1520(c)).
>
> (4)     From May 16, 2005 through July 10, 2007, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).
>
> (5)     After careful consideration of the entire record, I find that, from May 16, 2005, through July 10, 2007, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). I specifically find that during this period the claimant could lift ten pounds occasionally and ten pounds frequently and could sit for six of eight hours, walk for two of eight hours, and stand for two of eight hours. The claimant could never climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He required avoidance of concentrated exposure to hazards. He required an at-will-sit-stand option. He required absences from the workplace, the frequency and duration of which would vary in his sole discretion.
>
> (6)     From May 16, 2005 through July 10, 2007, the claimant was unable to perform past relevant work (20 CFR 404.1565).

2

(7)     The claimant was born on June 8, 1976 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9)     The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from May 16, 2005 through July 10, 2007 (20 CFR 404.1568).

(10)    From May 16, 2005 through July 10, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

(11)    The claimant was under a disability, as defined by the Social Security Act, from May 16, 2005 through July 10, 2007 (20 CFR 404.1520(g)).

(12)    Medical improvement occurred as of July 10, 2007, the date the claimant's disability ended (20 CFR 404.1594(b)(1).

(13)    Beginning on July 10, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2).

(14)    After careful consideration of the entire record, I find that, beginning on July 10, 2007, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[.] I specifically find that claimant has had the capacity to lift ten pounds occasionally and ten pounds frequently and to sit for six of eight hours, walk for two of eight hours, and stand for two of eight hours. The claimant has been able to never climb ladders, ropes, or scaffolds and to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He has required avoidance of concentrated exposure to hazards. He has required an at-will sit-stand option.

(15)    The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(I)).

(16)    Since July 10, 2007, the claimant's age category has not changed (20 CFR 404.1563).

3

(17)    Beginning on July 10, 2007, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

(18)    Beginning on July 10, 2007, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(19)    Beginning on July 10, 2007, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

(20)    The claimant's disability ended on July 10, 2007 (20 CFR 404.1594(f)(8)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals

4

an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id*.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The record reveals that the plaintiff was born on June 8, 1976, was 28 years old on his alleged onset date, and was 32 years old when the ALJ rendered his decision (*see* Tr. 102, 119). He is a high school graduate and worked in various positions, including an electrician's helper, a machine operator, and a surveyor's assistant (Tr. 143).

The plaintiff was injured on the job in May 2005 at a construction site when he was struck in the back by a tractor (Tr. 32). He filed a worker's compensation claim and received a monetary settlement (Tr. 35). This injury also forms the basis of his disability claim.

### Medical Treatment

Even before sustaining an injury to his back in May 2005, the plaintiff had a history of back problems (*see* Tr. 35). Prior to May 2005, he had undergone two back surgeries, but he fully recovered from these surgeries, returned to work, and was leading a "normal life" (Tr. 35-36).

In May 2005, the plaintiff began experiencing pain in his low back and legs after he was hit by a tractor while working at a construction site (Tr. 369, 383). He reported that his symptoms of pain and numbness were aggravated by standing, lifting and walking (Tr. 339, 369). In April 2006, the plaintiff began seeing Dr. Charles Kanos for treatment. Dr. Kanos noted that the plaintiff continued to have pain after multiple treatment modalities (Tr. 258). Accordingly, on April 18, 2006, Dr. Kanos performed surgery on the plaintiff to decompress spinal nerve roots at the L4-5 and L5-S1 levels (Tr. 232, 240-41).

The plaintiff next saw Dr. Kanos post-surgery in May 2006. He stated he had numbness and a tight sensation in the lower left leg, burning from the left knee to the foot, especially in the morning, but the low back pain and right leg pain had resolved. Overall, the plaintiff was "quite pleased with his improvement." The plaintiff stated that his back pain was approaching 100% improvement since surgery. Dr. Kanos noted that the plaintiff's back and leg pain was much better and his mild dorsiflexor weakness was much better (4+/5). Dr. Kanos noted that the plaintiff was restricted from working for six weeks (Tr. 335-36).

About six weeks later, in mid-June 2006, the plaintiff again saw Dr. Kanos. The plaintiff stated he still had some numbness in the lower left leg to the toes, but the tight sensation in the left calf had improved (Tr. 337). Dr. Kanos found the plaintiff was at maximum medical improvement with an impairment of 13% to the spine. He stated that the plaintiff was restricted from lifting greater than 50 pounds, but stated no limitations as to walking (Tr. 338).

In October 2006, the plaintiff reported to Dr. Kanos that he had a feeling of pressure in the low back and numbness in the left leg. Dr. Kanos noted that he could not do anything further surgically, and the plaintiff requested a referral for pain management. Dr. Kanos stated the plaintiff should be restricted from lifting greater than 25 pounds and

7

repetitive bending over 45 degrees.  He placed the plaintiff at maximum medical improvement, with an impairment of 17% to the spine (Tr. 418-19).

### *Physical Therapy*

The plaintiff began attending physical therapy sessions in mid-May 2006.  He stated that he was sore around his surgical scar and his left leg was tight.  The therapist noted that the plaintiff was able to toe walk and squat (Tr. 355).  Later in May, the plaintiff reported that he had walked half of a mile and that he that had been walking every day (Tr. 356).  At his fourth visit, his reported pain had decreased and he stated the pain was mainly soreness.  The therapist noted that his range of motion had increased (Tr. 358).  At his sixth visit at the end of May, the plaintiff stated, "I am getting much better" (Tr. 359).  The plaintiff's primary issue was with soreness (Tr. 359-60).  In mid-June 2006, at his twelfth visit, the plaintiff noted some tightness, but again reported decreased pain.  The therapist noted the plaintiff was overall better.  His left ankle and foot were still slightly weak, but his range of motion and strength had increased (Tr. 362).

The plaintiff indicated that he felt he needed more physical therapy to increase the strength of his left leg (Tr. 362).  At sessions in July 2006, he reported some pain and tightness, but he also made progress and reported feeling better (Tr. 364-68).  He had increased range of motion, strength and endurance.  At the end of July 2007, treatment notes reported that he was ready for discharge (Tr. 368).

The plaintiff returned to physical therapy in 2007 to improve his back extension and improve his pain (Tr. 549). In August 2007, the therapist noted the plaintiff's overall mobility was decreased, but indicated that his progress was good (Tr.  544-46).  In late August 2007, the plaintiff reported decreased pain (Tr. 544).

**Pain Management by Dr. Holdren**

The plaintiff first saw Dr. Rebecca Holdren in November 2005[2] for a worker's compensation pain management consultation, at which time the plaintiff reported back and leg pain (Tr. 343). The plaintiff saw Dr. Holdren again on several occasions from December 2005 through March 2006 (Tr. 346, 352-54, 221-27). In January 2006, the plaintiff reported that he had increased his Lortab (prescription painkiller) on his own because he was in pain (Tr. 221). Dr. Holdren noted that the plaintiff complained of muscle cramps, muscle weakness, low back pain radiating to both legs, knee pain, ankle and foot pain on the left side, and back and leg pain. She noted that the plaintiff had neurological complaints of tingling, burning, and numbness in his legs. The plaintiff also informed her that he was depressed and anxious and suffering from stress (T. 222). Physical exam showed that straight-leg raising test was positive on the left and aggravated by the heel walk test. Mood was flat, sensory was decreased due to pinprick in the L5 distribution on the left and the Achilles reflex with decreased reflexes, antalgic gait, and poor postural alignment (T. 222). MRI showed L4-5 and L5-S1 herniations. As to work, Dr. Holdren noted that the plaintiff was limited to "light" duty, with no lifting greater than 10 pounds and no repetitive bending or lifting, and needed to change positions frequently (Tr. 223). On March 23, 2006, physical exam was similar to the January exam (Tr. 228).

After March 2006, the plaintiff next saw Dr. Holdren in March 2008. The plaintiff had pain in his low back and left leg, but he reported his pain was somewhat improved (Tr. 550).

---

[2]The plaintiff states in his brief that Dr. Holdren began treating him on August 27, 2002, and continued treatment until April 7, 2004 (pl. brief at 6). However, the medical records cited by the plaintiff are from Dr. Kanos and Dr. Alfred Nelson at the Southeastern Neurological and Spine Institute (*see* Tr. 263-97). The earliest medical record from Dr. Holdren is dated November 3, 2005 (Tr. 343).

9

*Pain Management by Dr. Haasis*

The plaintiff began seeing Dr. John Haasis in December 2006 for pain management, at which time the plaintiff reported ongoing low back and leg pain (Tr. 476). He had decreased range of motion at his thoracolumbar spine (Tr. 483). Dr. Haasis noted the plaintiff's back pain had been managed medically with benefit in the past and he would restart the beneficial modalities and investigate the potential benefits of steroid nerve root blocking (Tr. 484). A nerve conduction study indicated abnormalities that suggested a peroneal neuropathy in the plaintiff's left leg (Tr. 469). Dr. Haasis prescribed a painkiller (Tr. 485). In January 2007, the plaintiff reported decreased pain and improvement in his quality of life (Tr. 476). He had decreased range of motion at his thoracolumbar spine, but he had good strength in his arms and legs (Tr. 477-78). In February 2007, Dr. Haasis surgically injected the plaintiff's lumbar spine with steroids to treat his low back and leg pain (Tr. 474). Upon followup in March 2007, the plaintiff again reported decreased pain and improvement in his quality of life (Tr. 523). He stated that he still had numbness in his left leg, but the steroid injection had helped his back a lot (Tr. 523). In late March 2007, Dr. Haasis again injected the plaintiff's lumbar spine with steroids (Tr. 521). By May 2007, the plaintiff reported much reduced pain levels and treatment records indicate vocational rehabilitation was discussed (Tr. 517). On July 10, 2007, the plaintiff again reported decreased pain (Tr. 513). Treatment notes indicate that when vocational rehabilitation was again discussed, the plaintiff stated that "his lawyer had not told him what to do . . . he was about to settle the case" (Tr. 513).

*Pain Management by Nurse Spears*

The plaintiff saw Lisa Spears, A.N.P., on several occasions in 2008 for pain management (Tr. 553-60). Nurse Spears consistently reported that the plaintiff's gait was antalgic, and his station and posture were normal (Tr. 555, 559). In August 2008, he

reported his activities included light housework (Tr. 557).  In December 2008, Nurse Spears noted that there was moderate generalized tenderness in the lumbar area, but the plaintiff had full, painless motion of the thoracic and lumbar spine (Tr. 555).  He also had normal stability, strength and muscle tone (Tr. 555).

### *Medical Opinions*

In January 2009, Dr. Holdren completed a multiple choice form titled "Clinical Assessment of Pain" (Tr. 567-68).  By circling multiple choice answers, she indicated that:

> a.      pain distracted Plaintiff from adequate performance of his daily activities;
>
> b.      with physical activity, Plaintiff would likely experience greatly increased pain, causing distraction or abandonment of tasks;
>
> c.      significant side effects of medications could be expected to limit the effectiveness of his work or everyday tasks, such as driving a car;
>
> d.      pain and/or drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattentiveness, or drowsiness; due to pain and/or prescribed medication, he would be "totally restricted and thus unable to function at a productive level of work";
>
> e.      although pain might be less intense or less frequent in the future, it would still remain a significant element in Plaintiff's life; and
>
> f.      typical pain treatment modalities have been used successfully for patients with symptoms similar to Plaintiff's.

(Tr. 567-68).

In November 2006, Dr. Daniel Cordas performed an independent medical examination of the plaintiff.  At the examination, the plaintiff stated that the April 2006 surgery had resolved his back pain, but he continued to have numbness in his left leg, which if anything was worse than before surgery (Tr. 425).  He said his back pain was better, but he still could not lift anything despite physical therapy (Tr. 425-26).  Dr. Cordas noted, "[w]ith regard to work capacity, the [the plaintiff] states that he is not able to lift anything" (Tr. 427).

11

He stated that based upon the plaintiff's limited range of motion and significant neurological findings, he felt that the plaintiff most likely was not capable of even sedentary work and was therefore totally disabled (Tr. 427). However, he noted that a functional capacity evaluation would more accurately define the plaintiff's functional abilities (Tr. 427).

Dr. Cordas completed a multiple choice form titled "Clinical Assessment of Pain." By circling multiple choice answers, he indicated that:

a.    pain distracted Plaintiff from adequate performance of his daily activities;

b.    with physical activity, Plaintiff's pain would likely increase to such a degree as to require increased medication or substantial amounts of bed rest;

c.    significant side effects of medications could be expected to limit the effectiveness of his work or everyday tasks, such as driving a car;

d.    pain and/or drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattentiveness, or drowsiness; due to his pain and/or prescribed medication, she would be "totally restricted and thus unable to function at a productive level of work";

e.    little improvement was likely–in fact, pain was likely to increase with time; and

f.    typical pain treatment modalities have had no appreciable impact or only briefly altered the level of pain for patients with symptoms similar to Plaintiff's (Tr. 428-29).

Additionally, Dr. Cordas completed a form titled "Medical Source Statement (Physical)." Via check boxes, Dr. Cordas indicated that the plaintiff could:  occasionally lift less than 10 pounds, but could not frequently lift any amount; stand and/or walk for 30 minutes without interruption, for a total of two hours in an eight-hour workday; and sit for 30 minutes without interruption, for a total of two hours in an eight-hour workday.  Dr. Cordas also indicated that the plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, and his ability to reach, handle, and push/pull were limited by pain and weakness.  When asked to state his supportive clinical findings, Dr. Cordas wrote:  "See report."  When asked

12

if his opinion was based primarily upon the plaintiff's subjective complaints, Dr. Cordas wrote: "No" (Tr. 430-32).

Finally, Dr. Cordas completed a form titled "Worker's Compensation Questionnaire." On this form, Dr. Cordas indicated the plaintiff was "totally disabled" and unable to work full-time on a regular and sustained basis due to "severe lumbar degenerative disc disease causing left leg numbness/weakness [and] pain" (Tr. 433-34).

In November 2006, state agency physician Dr. Dale Van Slooten completed a physical residual functional capacity assessment (Tr. 449-56). Dr. Van Slooten opined that the plaintiff was capable of performing work at the light exertional level. He found that, in relation to an eight-hour workday, the plaintiff could: stand or walk for six hours; sit for six hours; lift up to 20 pounds occasionally; and lift up to 10 pounds frequently. Dr. Van Slooten noted that the plaintiff had normal gait and station and good strength in his left foot in May 2006. He also noted that the plaintiff's treating physician indicated he could lift up to 25 pounds and had reached maximum medical improvement in November 2006 (Tr. 449-56).

In February 2007, state agency physician Dr. Seham El-Ibiary completed a physical residual functional capacity assessment (Tr. 503-10). Dr. El-Ibiary also indicated that the plaintiff was capable of performing work at the light exertional level He found the same physical limitations that Dr. Van Slooten found in November 2006 (Tr. 503-10).

### Plaintiff's Testimony

The plaintiff testified that he had pain mainly at the site of his third back surgery, which spread out over his lower back, up his spine to his neck, and down both legs (Tr. 37). His back pain was constant, but it ranged from moderate to severe (Tr. 43). He had severe numbness in his left leg from his knee to his foot (Tr. 37). He also described tingling and tightness (Tr. 39). He said he needed pain medication daily and it made him

13

drowsy (Tr. 38, 40). He testified that, other than problems in relation to his back, he had no other health problems that affected his ability to function day-to-day (Tr. 42).

The plaintiff testified that, on a typical day, he would get up in the morning with his wife and then she would go to work (Tr. 38). Afterwards, he would lie down again, then get up and fix himself a meal and sit on the couch (Tr. 38). He said he may drive to his grandmother's house and sit with her during the day (Tr. 38). He testified that he helped fold laundry and put dishes in the dishwasher, but did not do any other housework (Tr. 43-44). He drove either daily or every other day (Tr. 45). He went to the grocery store with his wife (Tr. 46). He sometimes took his two sons to the movies, the park, and the playground (Tr. 46). On Sunday mornings and Sunday nights, he went to church (Tr. 40). He also went out to eat (Tr. 40). Recently, he rode with his father-in-law to Charlotte, North Carolina (Tr. 45). He said he could no longer go skiing, water tubing, or golfing because they aggravated his back (Tr. 38-39). He testified that he got married in August 2008 and flew to Aruba for his honeymoon (Tr. 47).

As to his physical limitations, the plaintiff testified that bending over was tough (Tr. 40). His crotch area went numb when sitting for a long time, and then his back tightened up when he stood up (Tr. 41). He could sit comfortably for 30 minutes before needing to stand up and stretch his back (Tr. 41). He could stand about 30 minutes before his scar aggravated him (Tr. 42). He said he needed to be constantly moving (Tr. 41).

***Vocational Expert's Testimony***

A vocational expert appeared and testified at the hearing (Tr. 47-60). Based upon a review of the records and the plaintiff's testimony, the vocational expert testified that the plaintiff's past relevant work included: electrician's helper; tire machine operator; meter reader; survey assistant; general warehouse worker; and an unloader of trucks in a warehouse (Tr. 51-52). The vocational expert described the characteristics of each position

14

(Tr. 51-52). The ALJ asked the vocational expert to consider a hypothetical person with the plaintiff's age, education, and past work (Tr. 52). The hypothetical person could perform a limited range of work at the light exertional level, except that the person required an at-will sit-stand option (Tr. 52). The vocational expert said that the hypothetical individual would not be able to perform the plaintiff's past relevant work (Tr. 53). However, the individual could perform other work including the following: surveillance system monitor, table worker, and cashier (Tr. 54). The ALJ also provided a modified hypothetical, indicating that the hypothetical person would miss work at various times, the frequency and duration of which would be at the sole discretion of the hypothetical individual (Tr. 55). The vocational expert indicated that, with this modification, there would be no competitive employment available in the regional or national economy. The vocational expert stated that his testimony was consistent with the *Dictionary of Occupational Titles* (Tr. 54).

### Evidence Submitted to Appeals Council

After the ALJ issued his decision, the plaintiff asked the Appeals Council to review his case (*see* Tr. 6) and submitted the following evidence: the March 2009, May 2009, and July 2009 treatment notes of Nurse Spears (Tr. 4, 569-83) and a July 2009 "Clinical Assessment of Pain" form completed by Dr. Holdren (Tr. 4, 584-85). Nurse Spears's treatment notes from March 2009, May 2009, and June 2009 (Tr. 569-83) state the plaintiff had moderate generalized tenderness in the lumbar area, but the plaintiff had full, painless motion of the thoracic and lumbar spine (Tr. 571, 575, 581). He also had normal stability, strength, and tone (Tr. 571, 575, 581). His gait was antalgic, and his station and posture were normal (Tr. 571, 575, 581). In March 2009, the plaintiff reported his activities over the last month included walking (Tr. 583). He said muscle spasms in his lower back were disturbing his sleep, but the spasms were better than they had been in February 2009 (Tr. 579). Ultram, Imipramine HCL, and Zanaflex were prescribed (Tr. 582). In May

2009, the plaintiff indicated the prescribed medication was helping with night muscle spasms (Tr. 573). The plaintiff complained of aching in his left foot, but said medication was helping it (Tr. 578). His activities over the last month included walking with his wife (Tr. 578). In July 2009, Nurse Spears indicated that the plaintiff complained of low back pain, but his pain level was manageable with medications (Tr. 569). She noted that he was not taking narcotics, but he thought narcotics might be helpful (Tr. 569).

In July 2009, Dr. Holdren completed another multiple choice form titled "Clinical Assessment of Pain" (Tr. 584-85), circling the same answers that she circled in January 2009 (*cf.* Tr. 567-68 and 584-85). According to Dr. Holdren, the plaintiff suffered from pain so severe that it distracted him from the adequate performance of daily activities or work and that physical activity such as walking, standing, bending, stooping, and movement of extremities greatly increased his pain to the extent that it would cause distraction from a task or total abandonment of a task. Dr. Holdren also noted that medications prescribed for the plaintiff for his chronic severe pain syndrome caused significant side effects which would limit his effectiveness to perform work duties or everyday tasks such as driving. She further noted that the plaintiff's pain and the side effects of the medications he took were severe and limited effectiveness to perform work due to distraction, inattentiveness, drowsiness, etc. She concluded that pain would remain a significant element in the plaintiff's life (Tr. 584-85).

The Appeals Council denied the plaintiff's request for review, finding that the additional evidence did not provide a basis for changing the ALJ's decision (Tr. 1-2).

## **ANALYSIS**

The plaintiff alleges disability commencing May 16, 2005. The ALJ determined that the plaintiff had the following severe impairments: lumbar syndrome status post laminectomies, peroneal neuropathy, and obesity. The ALJ further found that the

plaintiff was disabled from May 16, 2005, through July 10, 2007, but not thereafter. Specifically, the ALJ found that after July 10, 2007, the plaintiff's residual functional capacity ("RFC") had improved such that he no longer required absences from the workplace, the frequency and duration of which would vary in his sole discretion (Tr. 25). The plaintiff argues that the ALJ's decision is not supported by substantial evidence and the ALJ erred by: (1) failing to properly evaluate his credibility; (2) improperly evaluating the opinion of his treating physician, Dr. Rebecca Holdren; (3) failing to consider his impairments in combination; and (4) finding that his disability ceased on July 10, 2007. The plaintiff further argues that the Appeals Council erred in finding that the additional evidence submitted by the plaintiff did not provide a basis for changing the ALJ's decision.

### Credibility

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271

17

F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)  the individual's daily activities;

(2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)  factors that precipitate and aggravate the symptoms;

(4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ found the plaintiff "generally credible" as to his statements concerning the limiting effects of his symptoms for the time period from May 16, 2005, through July 10, 2007. However, the ALJ found that the plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible beginning on July 10, 2007, to the extent they were inconsistent with the RFC assessment (Tr. 25). The ALJ cited the following evidence in support of his finding:

18

> The claimant can sit through movies with his son, based on the reasonable assumption that he does not leave the children by themselves for long periods of time in a movie theater. His pain does not prevent him from going out to eat, nor did it prevent him from driving to Charlotte at one point to visit a relative. The claimant is able to bend over to fold clothes and load a dishwasher. In terms of the claimant's left lower extremity numbness, I once again note that his leg operated well enough to honeymoon in Aruba. One does not reasonably take a beach honeymoon with the attendant sand and ocean without some functioning of his lower extremities. Of course, I recognize a reasonable residual amount of post- surgical neuropathy, hence the limitations that I assessed above. In terms of the claimant's allegations of poor sleep, he is able to wake up to see his wife off to work. He can stay awake long enough to perform some household chores and visit with family and friends. His drowsiness does not prevent him from driving.

(Tr. 25).

The plaintiff argues that the ALJ erred in finding that he is not credible based upon his performance of light household chores (Tr. 43-44, loading the dishwasher and folding clothes) and the fact that he went to Aruba on his honeymoon. This court agrees. The plaintiff has had three lumbar surgeries, and the record is replete with evidence of his severe, chronic pain. The plaintiff returned to work following his first two surgeries but did not do so following the third. As the plaintiff argues, the fact that he can do some household chores, watch a movie with his child, and go on his honeymoon is not substantial evidence that he can engage in substantial gainful activity on a regular and sustained basis. *See Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping"); *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act."). While the ALJ stated that the plaintiff's pain did not prevent him from "driving to Charlotte," the plaintiff actually testified that he "rode with" his father-in-law to Charlotte (Tr. 45). There was no testimony that the plaintiff drove or whether or how often they stopped

19

on the way (*see* Tr. 45). Furthermore, the ALJ's conclusion that the plaintiff's complaint of leg numbness was not credible because he went to Aruba and possibly enjoyed the sand and ocean there is insupportable. Accordingly, upon remand, the ALJ should be directed to analyze the plaintiff's credibility in accordance with the foregoing.

### Treating Physician

The plaintiff next argues that the ALJ failed to properly consider the opinion of his treating physician, Dr. Holdren. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the Listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p, 1996 WL 374188, requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. *Id.* at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the

20

> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected.  Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in [20 C.F.R. § 416.927].  In many cases,
> a treating source's medical opinion will be entitled to the
> greatest weight and should be adopted, even if it does not meet
> the test for controlling weight.

*Id.* at *4.

In January 2009, Dr. Holdren, a physiatrist who treated the plaintiff since 2005,[3] indicated that:

> a.     pain distracted the plaintiff from adequate performance
> of his daily activities;
>
> b.     with physical activity, the plaintiff would likely experience
> greatly increased pain, causing distraction or abandonment of
> tasks;
>
> c.     significant side effects of medications could be expected
> to limit the effectiveness of his work or everyday tasks, such as
> driving a car;
>
> d.     pain and/or drug side effects could be expected to be
> severe and to limit effectiveness due to distraction,
> inattentiveness, or drowsiness; due to pain and/or prescribed
> medication, he would be "totally restricted and thus unable to
> function at a productive level of work";
>
> e.     although pain might be less intense or less frequent in
> the future, it would still remain a significant element in the
> plaintiff's life; and
>
> f.     typical pain treatment modalities have been used
> successfully for patients with symptoms similar to the plaintiff's.

(Tr. 567-68).  In July 2009, Dr. Holdren completed another form titled "Clinical Assessment of Pain" (Tr. 584-85), giving  the same answers that she circled in January 2009 (*cf.* Tr. 567-68 and 584-85).

The ALJ found as follows with regard to Dr. Holdren's opinion:

> I did not give much weight to the "opinions" of Dr. Holdren
> expressed on a multiple-choice form.  Her opinions regarding
> the claimant's pain level are wholly inconsistent with the
> claimant's broad array of daily and social activities.  It is highly

---

[3]*See* footnote 2.

> unreasonable to find that an individual who is able to honeymoon in Aruba is distracted by pain so severely to prevent the adequate daily performance of activities. The claimant's ability to bend over to load dishes in the dishwasher, to drive, to fold clothes, and to care for his sons part-time refute Dr. Holdren's overly broad limitations. Dr. Holdren's multiple-choice assessment is the only opinion regarding the claimant's limitations since July 10, 2007.

(Tr. 25).

The plaintiff argues that the fact that he could perform some light household chores and go to Aruba for his honeymoon is not a proper basis to reject Dr. Holdren's opinion. As discussed above with regard to the ALJ's credibility analysis, this court agrees that such evidence does not constitute substantial evidence upon which to reject Dr. Holdren's opinion.

Furthermore, as noted by the plaintiff, the only other treating or examining physician who performed a specific functional assessment of the effect that the plaintiff's chronic, severe pain had upon his ability to work was Dr. Cordas, an orthopedist who examined the plaintiff on November 2, 2006. Dr. Cordas' opinion is consistent with the opinion of Dr. Holdren. According to Dr. Cordas, the plaintiff suffered from pain of such severity that it distracted him from the adequate performance of daily activities or work. He too noted that physical activity such as walking, standing, bending, stooping or movement of extremities would increase the pain suffered to such an extent that it would require increased medication and substantial amounts of bed rest. Dr. Cordas also opined that the side effects of the medication taken by the plaintiff would limit his effectiveness to perform work duties or everyday tasks such as driving. Dr. Cordas also stated that the severity of the plaintiff's pain and the side effects of his medications were severe and limited his effectiveness to perform work due to distraction, inattentiveness, drowsiness, etc. (Tr. 425-29). In addition, Dr. Cordas completed a specific evaluation of the physical limitations resulting from the plaintiff's impairments (Tr. 430-33). Dr. Cordas noted that the plaintiff could only lift less than ten pounds occasionally and was limited in standing and walking for

22

a half-hour at a time and no more than two hours during an eight-hour work period.  He could only sit for half an hour at a time and no more than two hours during an eight-hour work day.  In addition, the plaintiff was unable to climb, balance, stoop, crouch, kneel, or crawl.  He noted that the plaintiff's ability to reach, handle, and push or pull objects was limited.

Accordingly, upon remand, the ALJ should be instructed to consider Dr. Holdren's opinions in accordance with the foregoing.

### Combination of Impairments

In a disability case, the combined effect of all a claimant's impairments must be considered without regard to whether any such impairment, if considered separately, would be sufficiently disabling.  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974).  The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  *Id.*

The plaintiff argues that the ALJ improperly "fractionalized" his impairments and did not assess their total impact upon his ability to engage in substantial gainful activity (pl. brief at 20-21).  However, as argued by the Commissioner, the plaintiff testified that, other than problems in relation to his back, he had no other health problems that affected his ability to function day-to-day (Tr. 42).  The plaintiff appears to be suggesting that the ALJ should have considered all three back surgeries in assessing his current residual functional capacity (pl. brief at 20).  However, the plaintiff testified that he had a complete and full recovery after his first two surgeries, returned to work, and was leading a "normal" life prior

23

to his work-related injury in May 2006 (Tr. 35-36).  Based upon the foregoing, this allegation of error is without merit.

### Medical Improvement

The plaintiff further argues that the ALJ erred in finding that his disability ceased on July 10, 2007.  The ALJ found that the limitation that the plaintiff would miss various days or times of work no longer applied after that date (Tr. 25).  The ALJ found that treatment notes indicated the plaintiff "steadily improved" after his third back surgery in April 2006.  He further noted that in July 2007, treatment notes indicated that the plaintiff's condition had improved to the extent that he was ready for vocational rehabilitation (Tr. 25; *see* Tr. 513).   As discussed above, this court finds that the case should be remanded for a re-analysis of the plaintiff's credibility and the opinion of his treating physician.  In light of that, upon remand, the ALJ should also be instructed to reconsider whether the plaintiff's condition improved such that he was no longer disabled as of July 2007.

### Appeals Council

As noted above, after the ALJ issued his decision, the plaintiff asked the Appeals Council to review his case (*see* Tr. 6) and submitted the following evidence:  the March 2009, May 2009, and July 2009 treatment notes of Nurse Spears (Tr. 4, 569-83) and a July 2009 "Clinical Assessment of Pain" form completed by Dr. Holdren (Tr. 4, 584-85). The Appeals Council denied the plaintiff's request for review, stating, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the [ALJ]'s decision" (Tr. 2).  By incorporating this evidence into the record and considering it upon request for review, the Appeals Council determined that this evidence was both new and material and related to the period on or before the date of

the ALJ's decision.  *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Wilkins v. Secretary of Dep't of Health and Human Serv.*, 953 F.2d 93, 95 (4th Cir. 1991).

The denial of review by the Appeals Council without an explanation or discussion creates a dilemma for the reviewing court.  Because the Appeals Council denied review, the decision of the ALJ became the final decision of the Secretary. *Wilkins*, 953 F.2d at 96; *see* 20 C.F.R. § 404.981.  Therefore, this court may review only the ALJ's decision to deny the plaintiff's request for benefits.  However, that review must include the new and material evidence incorporated by the Appeals Council into the administrative record.  *Wilkins*, 953 F.2d at 96.  Thus, this court must review a record that contains evidence not seen, and therefore not evaluated, by the ALJ.

The Commissioner, relying on unpublished Fourth Circuit case law and case law from other circuits, argues that the Appeals Council is not required to articulate specific reasons for how it weighed the newly-submitted evidence (def. brief. at 26-28). *See Hollar v. Comm'r of the Soc. Sec. Admin.,* No. 98-2748, 1999 WL 753999, at *1 (4th Cir. Sept. 23, 1999); *Freeman v. Halter*, No. 00-2471, 2001 WL 847978, at *2 (4th Cir. July 27, 2001).  "There is a split among South Carolina district courts as to whether the Appeals Council must make an assessment of additional evidence in its decision to deny review." *Sapienza v. Astrue*, C.A. No. 0:09-3153-HMH-PJG, 2010 WL 3781998, at *2 (D.S.C. Sept. 22, 2010) (citing cases).  In a recent case, the Honorable Henry M. Herlong, Jr.,  Senior United States District Judge, noted:

> However, in *Jordan v. Califano*, 582 F.2d 1333, 1335-36 (4th Cir.1978), the United States Court of Appeals for the Fourth Circuit explained that when the Appeals Council simply states that "additional evidence ha[s] been considered" that explanation is "plainly deficient." The court held that in determining whether an applicant is entitled to disability benefits, the ALJ must "consider all relevant evidence, including that [given to the appeals council], and must indicate explicitly that such evidence has been weighed and its weight." *Id.* at 1335 (internal quotation marks omitted) . . . .

25

> In light of the Fourth Circuit's holding in *Jordan*, the court agrees with the holding in *Harmon* [*v. Apfel*, 103 F.Supp.2d 869 (D.S.C. 2000)]. In *Harmon*, the court concluded that "when the Appeals Council consider[s] evidence that the ALJ did not have the opportunity to weigh, and reject[s] that new, additional evidence without specifying a reason for rejecting it or explicitly indicating the weight given to the evidence," the ALJ must, on remand, "articulate his assessment of the additional evidence presented by" an applicant. 103 F.Supp.2d at 874.

*Sapienza,* 2010 WL 3781998, at *3.

Here, the Appeals Council did not specify a reason for rejecting the additional evidence. Such consideration seems especially important in a case such as this, where the ALJ found the plaintiff was disabled for a closed period but medically improved such that he was no longer disabled after July 10, 2007. Accordingly, upon remand, the ALJ should articulate his assessment of the additional evidence submitted by the plaintiff to the Appeals Council so that the court may determine whether the decision is based upon substantial evidence.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

May 2, 2011                                    Kevin F. McDonald
Greenville, South Carolina                     United States Magistrate Judge

26